52 F.3d 322
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Jasmine PHILLIPS, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Derek Warren SHAW, Defendant-Appellant.
 Nos. 94-5113, 94-5114.
 United States Court of Appeals, Fourth Circuit.
 Argued: March 9, 1995.
Decided: April 26, 1995.
 
 Appeals from the United States District Court for the Eastern District of Virginia, at Norfolk. J. Calvitt Clarke, Jr., Senior District Judge. (CR-93-130)
 ARGUED: W. Thurston Harville, Norfolk, Virginia, for Appellants. ON BRIEF: Robert Edward Frank, Norfolk, Virginia, for Appellant Phillips. Helen F. Fahey, United States Attorney, Carol M. Marx, Special Assistant United States Attorney, Norfolk, Virginia, for Appellee.
 E.D.Va.
 AFFIRMED.
 Before ERVIN, Chief Judge, WILKINS, Circuit Judge, and WILLIAMS, United States District Judge for the District of Maryland, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Jasmine Phillips and Derek Warren Shaw appeal their conditional pleas of guilty to possession with the intent to distribute cocaine base, see 21 U.S.C.A. Sec. 841(a)(1) (West 1981), on the basis that the district court erred in denying their motions to suppress a quantity of cocaine base seized by law enforcement officials and a statement Phillips made thereafter. Finding no error, we affirm.
 
 I.
 
 2
 On the morning of July 21, 1993, as part of an ongoing drug interdiction program, law enforcement officers monitored buses as they arrived at the Norfolk, Virginia Greyhound/Trailways Bus Station from cities known to be source cities for narcotics. The officers were dressed in plain clothes and carried only weapons that were concealed.
 
 
 3
 Phillips and Shaw arrived at the station at approximately 5:00 a.m. on a bus from New York, one of the source cities. As all passengers exited the bus to allow the interior to be cleaned, one of the officers observed Shaw turn to Phillips and say, "Cops." The officer then watched Phillips reboard the bus after all the passengers had departed, retrieve a blue carry bag from an overhead bin, and then walk into the terminal. As part of their routine procedure, the police then screened the interior of the bus with a dog trained in the detection of narcotics. The dog alerted on the bin from which Phillips had removed the bag. After the bus was cleaned, the passengers were allowed to board again. One of the officers, D.E. Alexander, watched Phillips return the bag to the same bin and sit in the aisle seat beneath the bin next to Shaw, who occupied the window seat.
 
 
 4
 Beginning in the rear of the bus, Alexander identified himself to each passenger individually and matched the passenger with the luggage in the overhead bin. Another officer conducted the same procedure, beginning in the front. When Alexander reached Phillips' seat, he stood slightly behind her and placed his hand on the top of her seat. Speaking in a casual tone of voice, Alexander identified himself to Phillips while showing her his badge and then asked if the blue bag belonged to her. After she replied affirmatively, he explained that the dog had detected an odor of narcotics in the bin and that, although he was not accusing her of anything, he would like permission to search the bag. She said he could and then asked Shaw, "Is that okay with you?" After he said yes, Alexander removed the blue bag from the bin and searched a side compartment without finding narcotics. Noticing that the main compartment was locked, he asked for the key. Shaw reached into his pocket and handed the key to Alexander, who then used it to open the bag. Alexander felt a hard lumpy substance contained within a piece of clothing inside the bag. He removed the substance and, after examination, suspected that it was cocaine base. Shaw and Alexander were then arrested. At the police station, Phillips gave a written statement indicating that she was hired by Shaw to act as a front while he transported drugs to North Carolina.
 
 
 5
 After being indicted for possession with the intent to distribute cocaine base, Phillips and Shaw unsuccessfully moved to exclude the physical evidence and Phillips' statement. Phillips and Shaw later entered conditional guilty pleas, reserving their rights to appeal the suppression determinations. See Fed.R.Crim.P. 11(a)(2).
 
 II.
 
 6
 Phillips and Shaw insist that their encounter with the police on the bus constituted an unlawful seizure of their persons under the Fourth Amendment, arguing that under the totality of the circumstances they did not feel free to leave. As a result, they contend, their subsequent consent to search the bag and Phillips' statement were tainted and must be suppressed as the "fruit of the poisonous tree." The Government does not maintain that the officers had the reasonable suspicion required to justify a seizure; rather, it argues only that Phillips and Shaw were not seized until after the cocaine base was discovered. We review the legal conclusions of the district court regarding suppression de novo, while its factual determinations are subject to review only for clear error. United States v. Rusher, 966 F.2d 868, 873 (4th Cir.), cert. denied, 113 S.Ct. 351 (1992).
 
 
 7
 "The Fourth Amendment does not proscribe all contact between the police and citizens, but is designed to prevent arbitrary and oppressive interference by enforcement officials with the privacy and personal security of individuals." INS v. Delgado, 466 U.S. 210, 215 (1984) (internal quotation marks omitted). "[T]o determine whether a particular encounter constitutes a seizure, a court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter." Florida v. Bostick, 501 U.S. 429, 439 (1991).
 
 
 8
 We agree with the district court that a reasonable person would have felt free to decline the request to search. When Alexander, who was dressed in civilian clothes, approached Phillips, he stood slightly behind her seat, thereby not blocking the aisle. Although another officer stood near the front of the bus, he was preoccupied with questioning other passengers. Alexander then identified himself, without displaying any weapons, and asked questions in a casual tone of voice. He also did not touch Phillips or Shaw, instead putting his hand on the back of Phillips' seat. See United States v. Flowers, 912 F.2d 707 (4th Cir.1990) (bus encounter involving similar circumstances held valid), cert. denied, 501 U.S. 1253 (1991). Since Phillips and Shaw were not seized within the meaning of the Fourth Amendment, the physical evidence obtained in the search and the incriminating statement made by Phillips need not have been suppressed.
 
 
 9
 Additionally, the district court found that Phillips and Shaw consented to the search of the bag, and that Phillips' incriminating statement was given voluntarily. Phillips and Shaw do not specifically contest these or any other factual findings made by the district court. Therefore, the decision of the district court to deny Phillips' and Shaw's motions to suppress evidence is affirmed.
 
 
 10
 AFFIRMED.